STATE OF WEST VIRGINIA

*In re*: **M.H.-1 and C.S.**

**No. 17-0547** (Randolph County 17-JA-019 & 17-JA-024)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father B.S., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's May 16, 2017, order terminating his parental rights to M.H.-1 and C.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for an improvement period and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed an abuse and neglect petition against M.H.-1's mother, M.H.-2, alleging abuse and neglect based on M.H.-2's two prior involuntary terminations. The petition also alleged that, when M.H.-1 was born, the mother represented to the hospital that she was acting as a surrogate for a couple. Following the child's birth, the mother admitted to hospital staff that petitioner was the father of the child and not the proposed adoptive father, as she previously stated. Petitioner was initially named as the "unknown father" in the petition due to the mother's different assertions regarding the child's paternity. The petition further alleged that petitioner was incarcerated following a probation revocation for an unrelated misdemeanor conviction due to his substance abuse issues and failed drug screens. According to the petition, petitioner was also in arrears in child support payments for C.S. Later,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and the mother share the same initials, we will refer to the child as M.H.-1 and the mother as M.H.-2 throughout this memorandum decision.

in March of 2017, the DHHR filed an amended petition alleging that petitioner, as confirmed by genetic testing, was M.H.-1's biological father. The petition also alleged that he abused the children due to his drug abuse; that he was impaired during his interview with the DHHR's caseworker; and that he and the mother engaged in domestic violence.

In April of 2017, the circuit court held an adjudicatory hearing at which petitioner stipulated that he had a history of substance abuse, engaged in domestic violence, and was in arrears on his child support obligation. Petitioner was adjudicated as an abusing parent and filed a motion for a post-adjudicatory improvement period. The circuit court took petitioner's motion under advisement, ordered that he submit to periodic random drug screening, and granted him visitation with the children. On April 28, 2017, the DHHR moved to terminate petitioner's parental rights based on his failure to submit to random drug screening and to visit the children. Petitioner submitted to only two drug screens and failed both for illicit substances.

In May of 2017, the circuit court held a dispositional hearing upon the DHHR's motion to terminate petitioner's parental rights. At the hearing, petitioner minimized the stipulations that he made at the adjudicatory hearing; denied any history of drug abuse, despite two failed drug screens; and claimed that he was not able to visit his children because of his work schedule. He admitted to failing to pay his child support obligation. The DHHR case worker testified that when she met with petitioner to conduct an assessment regarding his case, he appeared to be under the influence of drugs and fell asleep three times during the interview. The case worker also testified that petitioner made no effort to visit M.H.-1 since her birth or to pay his child support obligation. Additionally, C.S.'s mother, G.H., testified that petitioner had not visited C.S. for over a year. The circuit court denied petitioner's motion for an improvement period and found that he failed to prove by clear and convincing evidence that he would likely fully participate in the same. The circuit court also found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, noting that he "failed to meaningfully acknowledge those conditions despite the stipulations he made at the adjudicatory hearing." The circuit court entered an order on May 16, 2017, denying petitioner's motion for a post-adjudicatory improvement and terminating his parental rights to the children.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when,

---

[2]Petitioner's parental rights to both children were terminated below. According to the guardian, M.H.-1's biological mother, M.H.-2's, rights were also terminated below. M.H.-1 was placed in a foster home and the permanency plan is adoption into that home. Further, C.S. remains in the home of her non-offending, biological mother, G.H., and the permanency plan is to remain in that home.

although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. First, petitioner argues that the circuit court erred in its "cursory finding that his history of substance abuse, verbal domestic violence, and child support arrearage could not be successfully corrected." We do not agree. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is clear from the record that petitioner failed to demonstrate his ability to fully participate in an improvement period. Petitioner admitted that he had a history of substance abuse, but claims that he has no current substance abuse issues. However, the circuit court was presented with evidence that petitioner submitted to only two random drug screens, both of which were positive for illicit substances. Petitioner also admitted that he failed to participate in the court-ordered drug screens, even though he knew that clean drug screens were a prerequisite to visitation with the children. He also admitted that if he submitted to the required drug screens they might have been positive for Suboxone, Xanax, and marijuana. As such, it is clear that petitioner failed to establish that he was likely to fully participate in a post-adjudicatory improvement period. Accordingly, we find the circuit court did not err in denying petitioner's motion after a post-adjudicatory improvement period.

Moreover, the circuit court found that petitioner failed to remedy the conditions of abuse and neglect in the home. These findings were based on substantial evidence, including evidence that petitioner failed to fully participate in random drug screening and that he continued to engage in domestic violence. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the

3

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child .
. . .

Based upon the considerable evidence outlined above, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because, according to the circuit court, he was "unwilling or unable to provide adequately for the children's needs" and failed to visit with the children for approximately one year due to his non-compliance. The circuit court further found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings.

Accordingly, for the foregoing reasons, we find no error in the decision of the circuit court, and its May 16, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4